IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| KAREN J. WHITTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:07-CV-292 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits. For the reasons set forth herein, defendant's motion for summary judgment [doc. 17] will be granted, and plaintiff's motion for summary judgment [doc. 9] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for benefits in August 2005, claiming to be disabled by "[f]ibromyalgia, arthritis, high blood pressure, diabetes, memory loss, depression, stomach, cataracts" and dizziness caused by medication. [Tr. 50, 60]. Plaintiff alleges a disability onset date of July 2, 2004. [Tr. 50]. The claim was denied initially and on reconsideration.

Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in April 2007.

In June 2007, the ALJ issued a decision denying benefits. He determined at step two of the sequential evaluation process that plaintiff "has no medically determinable impairment or combination of impairments which are 'severe.'" [Tr. 16-21]. Plaintiff was therefore found ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. On October 26, 2007, review was denied, notwithstanding plaintiff's submission of almost twenty pages of additional medical records. [Tr. 4, 7].[1] The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background and Testimony*

Plaintiff was born in 1946 and has a high school equivalency degree. [Tr. 50, 271]. Her past relevant employment is as a factory worker. [Tr. 61]. Plaintiff claims to now be able to do "very little," other than attend church, due to constant total body pain. [Tr. 74-75, 90, 106].

---

[1] Plaintiff's additional documents [Tr. 249-67] are not discussed in her brief and are not an issue on appeal. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

2

III.

*Relevant Medical Evidence and Opinions*

In March 2004, treating physician Jim Wolfe referred plaintiff to Dr. John Chapman for diabetic vision evaluation. "Early cataract change was present bilaterally," but corrected vision was 20/20 in each eye. [Tr. 172].

On April 20, 2004, Dr. Wolfe wrote that plaintiff has "no muscle aches." [Tr. 136]. Four days prior to her alleged disability onset date, on June 28, 2004, Dr. Wolfe described plaintiff as "in no acute distress." [Tr. 134]. In September 2004, plaintiff reported low energy, swelling, "crossed" vision, and gastrointestinal complaints. [Tr. 131-32]. In October 2004, plaintiff reported impaired memory, which Dr. Wolfe questioned because plaintiff scored perfectly on a mental status examination that date. [Tr. 130-31]. Additionally, plaintiff's gastrointestinal issues had resolved, and she was noted to be "having no pain at present." [Tr. 130].

In March 2005, Dr. Wolfe noted decreased sensation in the feet. He provided a prescription for diabetic shoes and "[d]iscussed foot care." [Tr. 127-28]. In July 2005, plaintiff continued to report numbness, tingling, and swelling of the feet, but she had no joint complaints and her diabetes was termed "well controlled" by Dr. Wolfe. [Tr. 126]. Plaintiff was reportedly walking daily and Dr. Wolfe "[d]iscussed . . . the need to continue exercise." [Tr. 126]. In October 2005, in response to the Commissioner's inquiry, Dr. Wolfe wrote that plaintiff does not have an underlying mental disorder which significantly interferes with

3

functioning. [Tr. 122].

In August 2005, plaintiff saw rheumatologist Michael Bible on referral from Dr. Wolfe. Following interview, examination, and bloodwork, Dr. Bible opined that plaintiff "seems to have" fibromyalgia, bursitis of the knee, nerve lesions of the foot, muscular inflammation about the sternum, and bilateral swelling near the ears. [Tr. 161]. There is no indication that standard fibromyalgia trigger-point testing was performed. Of particular relevance to be discussed below, Dr. Bible's records indicate,

> The benefit of exercise regarding fibromyalgia was discussed with patient. It was emphasized that exercise is the primary mode of treatment, the primary mode of dealing with their pain and stiffness. The most important aspect of exercise is consistency. [I] suggested an exercise such as a daily walking program with a good pair of supportive running shoes. I suggested that the patient start walking 1/4 mile every day for a week, then 1/2 mile per day for a week, 3/4 mile per day for the next week, continuing this increment of 1/4 mile each week until they are up to 2 miles per day. After they have reached 2 miles per day, they can choose to either increase their distance or increase their rate.

[Tr. 161-62]. Dr. Bible's records also contain a September 12, 2005 entry, although it is unclear whether this entry pertains to a second appointment or the initial August 2005 visit. Nonetheless, the September notation makes clear that, "She is not exercising that much (walking). I had encouraged this in light of her fibromyalgia. . . . I encouraged patient in a regular, consistent exercise program (particularly walking)." [Tr. 200]. Dr. Bible also wrote that testing generated no evidence of inflammatory arthritis or "any underlying connective tissue disease except for the fibromyalgia." [Tr. 200].

4

Dr. Karl Konrad performed a consultative physical examination in October 2005. Fibromyalgia pressure point testing was "negative," and plaintiff exhibited no tenderness or impaired range of motion. [Tr. 174]. Motion was normal, strength was full in all extremities, and memory "for events surrounding present exam and for personal history [was] normal." [Tr. 174-75]. Plaintiff stated that she was unable to detect pin prick or light touch stimulation of her feet. [Tr. 174]. With glasses, plaintiff's vision was 20/30 and 20/50. [Tr. 174]. Otherwise, Dr. Konrad's examination was "unremarkable" and he opined that plaintiff "has no impairment-related physical limitations." [Tr. 175].

On November 17, 2005, Dr. Wolfe was aware of Dr. Bible's possible fibromyalgia diagnosis. He noted "some tenderness" in various areas and recommended increased exercise. [Tr. 119-20].

The following week, clinical psychologist Steven Lawhon performed a consultative mental examination. Dr. Lawhon opined that plaintiff has "mild to moderate" anxiety and depression which could produce "mild" limitations of concentration, persistence, and work adaptation. [Tr. 179]. Dr. Lawhon expressed no concern with plaintiff's memory, expressly opining, "Her ability to understand and remember is not significantly limited." [Tr. 177, 179].

In March 2006, plaintiff reported extreme pain. Dr. Wolfe's notes state both that plaintiff was, and was not, exercising. [Tr. 117-18]. Dr. Wolfe noted "multiple areas of tenderness on her upper shoulders and neck. These are diffuse and not really just over

5

trigger point[s] for fibromyalgia." He "discussed walking program which would help her fibromyalgia as well as her lipids and diabetes." [Tr. 118].

In January 2006, nonexamining Dr. Mary Payne concluded that plaintiff does not suffer from a severe impairment. [Tr. 194]. In April 2006, nonexamining Dr. Celia Gulbenk reached the same conclusion. [Tr. 195-98].

In June 2006, plaintiff reported decreased sensation in her feet along with some areas of muscular pain. Dr. Wolfe noted some tenderness and again recommended exercise. Diabetes was again deemed "well controlled." [Tr. 114-15]. In November 2006, plaintiff continued to report fatigue and memory loss. [Tr. 204]. Dr. Wolfe noted questionable fibromyalgia in January 2007. [Tr. 202].

Later that month, consulting rheumatologist Ghaith Mitri ordered bloodwork and imaging. The bloodwork results were not interpreted are thus of no assistance to the court. [Tr. 214, 216-17, 222-34]. Imaging showed only mild issues with plaintiff's thoracic and lumbar spine, knees, hands, and feet. [Tr. 213, 215, 218-21].

In April 2007, Dr. Wolfe submitted a medical/vocational assessment. He opined that plaintiff could not stand, walk, and sit for enough combined hours to complete an eight-hour workday, and that she would experience additional postural, manipulative, and environmental limitations. [Tr. 247-48]. Dr. Wolfe's brief explanations of his assessment are handwritten and essentially illegible. [Tr. 247-48].

6

IV.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments under the Social Security Act if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

V.

*Analysis*

Plaintiff argues that the ALJ erred in dismissing her case at step two. As noted, the ALJ found at that early stage of his sequential analysis that plaintiff "has no medically determinable impairment or combination of impairments which are 'severe.'" [Tr. 21].

A claimant fails at step two if she does not demonstrate an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Stated in the reverse, an applicant should be rejected at step two only if the alleged impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

While, the "severe" impairment threshold of step two is a "*de minimis* hurdle . . . , Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience" at steps four and five. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (citation omitted). This severity threshold "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S.

9

137, 153 (1987).

Plaintiff cites numerous conditions that she contends should have been sufficient, alone or in combination, to pass step two's "*de minimis* hurdle." On substantial evidence review, the court cannot agree that plaintiff has met her burden of proving an "impairment or combination of impairments which *significantly* limits [her] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c) (emphasis added).

Plaintiff claims to be disabled by arthritis. However, Dr. Bible's 2005 testing produced no evidence of inflammatory arthritis. [Tr. 200]. In June 2005, Dr. Wolfe noted that plaintiff had no joint complaints. [Tr. 126]. January 2007 imaging documented only mild issues in plaintiff's thoracic and lumbar spine, knees, hands, and feet. [Tr. 213, 215, 218-21]. In September 2004, Dr. Wolfe wrote that "her arthritis symptoms all seem to have resolved." [Tr. 132].

Plaintiff claims to be disabled by depression. However, Dr. Wolfe wrote in October 2005 that she does not have an underlying mental disorder which significantly interferes with functioning. [Tr. 122]. The following month, clinical psychologist Lawhon performed his consultative mental examination and opined that plaintiff's "mild to moderate" anxiety and depression would produce only "mild" workplace limitations. [Tr. 179].

Plaintiff claims to be disabled by high blood pressure, but no source has opined that this condition would cause any vocational limitation. Plaintiff claims to be disabled by stomach problems, but again no source has opined that this condition is limiting. Moreover,

10

Dr. Wolfe wrote in October 2004 that all gastrointestinal issues had resolved. [Tr. 130].

Plaintiff is purportedly disabled by medication-induced dizziness, yet in September 2005 and April 2006 she told the Commissioner that her medication causes no side effects. [Tr. 90, 106]. In November 2004, Dr. Mark Howell wrote that her dizziness was "currently resolved." [Tr. 158].

Plaintiff claims to be disabled by cataracts. However, one corrected vision test of record was 20/20 in each eye [Tr. 172], and the other test of record was 20/30 and 20/50 corrected. [Tr. 174]. No medical source has clearly opined that plaintiff's cataracts would significantly limit her ability to work, nor does it appear that standard corrective surgery has been recommended. In fact, ophthalmologist Chapman advised plaintiff in March 2004 to "return in one year or as necessary," but the record does not evidence that plaintiff has sought any additional care for this condition. [Tr. 172].

Plaintiff is purportedly disabled by diabetes. Her diabetes, however, is generally described by physicians as being under good control. While she has exhibited some reduced sensation in the feet, there is no evidence that this condition would generate a significant vocational limitation. Dr. Wolfe has recommended only diabetic shoes and "foot care." [Tr. 128].

Plaintiff claims to be disabled by fibromyalgia. "[A] *diagnosis* of fibromyalgia does not automatically entitle [the claimant] to disability benefits . . . . Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not

11

and the question is whether [claimant] is one of the minority." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citation and quotation omitted).

Typically, "fibromyalgia patients present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Instead, "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.* at 244.

As correctly noted by the ALJ [Tr. 19], plaintiff has received very little rheumatological care. This is not a case, as in *Rogers*, where treating specialists "continually tested for and [the claimant] increasingly exhibited the medically-accepted and recognized signs of fibromyalgia." *Rogers*, 486 F.3d at 244. As noted above, the administrative record does not contain any interpretation of rheumatologist Mitri's testing, and thus that evidence is of minimal value to the Commissioner and the court. [Tr. 214, 216-17, 222-34]. While rheumatologist Bible also obtained some bloodwork, there is no indication that standard trigger-point testing was performed. Further, it is noteworthy that Dr. Bible wrote vaguely that plaintiff "seems to have" fibromyalgia. [Tr. 161]. Dr. Wolfe has at times noted some tenderness, but expressly noted that the tenderness did not strictly correspond with the standard series of focal points presently associated with a diagnosis of fibromyalgia. [Tr. 118-20]. The court also notes that, in October 2005, Dr. Konrad's fibromyalgia pressure

12

point testing was "negative." [Tr. 174].

Whether plaintiff's complaints are the result of fibromyalgia or some other origin, they are subjective in nature. The same can be said for the April 2007 medical/vocational assessment submitted by treating physician Wolfe. As noted above, Dr. Wolfe's brief explanations of his assessment are handwritten and essentially illegible. [Tr. 247-48]. The Commissioner is not required to accept a treating physician's opinion if it is not supported by sufficient medical data and if a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). As correctly observed by the ALJ, "Dr. Wolfe's opinion is not supported by his own examinations which show limited clinical findings, but is based primarily on the claimant's complaints." [Tr. 20]. The ALJ accordingly gave "no weight" to Dr. Wolfe's assessment, and explained his reasoning in a manner satisfactory under *Shelman*.

Thus, to conclude that plaintiff suffers from one or more conditions causing more than a minimal effect on her ability to work, the ALJ would have needed to credit plaintiff's subjective complaints. He did not, instead concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 18]. In light of the lack of supporting objective evidence, and in light of inconsistencies in plaintiff's statements to the Commissioner, the ALJ's credibility determination was supported by substantial evidence.

13

For example, plaintiff claims to be limited in dressing herself because she cannot raise her arms above her head. [Tr. 75]. However, Dr. Konrad noted full range of movement in all joints. [Tr. 174]. Plaintiff has told the Commissioner that she does "very little" [Tr. 74, 273], that she is unable to bend or stoop "without extreme pain in my back or legs" [Tr. 77], and that she is unable to engage in hobbies or interests "because of pain." [Tr. 78, 90]. However, in describing her activities of daily living to Dr. Lawhon in November 2005, plaintiff stated that she "eat[s] out quite a bit," washes dishes, grocery shops, sweeps, cleans, does laundry, performs her own yardwork if her neighbor is out of town, "and enjoys painting pictures and doing ceramics and wood working." [Tr. 178].

Most concerning is plaintiff's administrative hearing testimony regarding doctors' instructions that she should walk as a means of battling her purported fibromyalgia. As noted above, the records of Drs. Wolfe and Bible indicate that each has, on *at least* one occasion, very directly "discussed," "emphasized," and "encouraged" plaintiff to walk as "the primary mode of treatment" for fibromyalgia. [Tr. 118, 161-62, 200]. The ALJ questioned plaintiff as to her compliance with her physicians' instructions, which - again - are the "primary" treatment recommendations for her most purportedly disabling condition:

> ALJ: . . . now what do you do in the afternoon between lunch and dinner? What do you do with yourself?
>
> Plaintiff: Not much of anything. I lay down and rest.
>
> ALJ: You don't exercise at all?
>
> . . .

14

| | | |
|---|---|---|
| ALJ: | You know, if you're going to, if in fact you do have it [fibromyalgia] which is questionable on the record. But you know, a regimen of exercise progressive is the, I keep saying cure. Not the cure but the [INAUDIBLE]. |
| Plaintiff: | I do. I do. I have some bands but I don't, they're rubber bands and you pull them this way. |
| ALJ: | That's not the, usually walking is the one they're talking about. |
| Plaintiff: | *Walking?* |
| ALJ: | About a quarter mile one week. Another quarter mile. You don't know what I'm even talking about do you? |
| Plaintiff: | *No. Nobody's told me I needed to walk for that. I've been told I need to walk but not for that.* |

[Tr. 277-78] (emphases added).

The above-cited testimony would cause any fact-finder to disbelieve plaintiff's subjective complaints. The records of Drs. Bible and Wolfe are most clear, yet plaintiff denied under oath that either physician had instructed her to consistently walk as treatment for fibromyalgia. To the extent that plaintiff would endeavor to blame her testimony on purportedly disabling memory problems, the court notes that Drs. Wolfe, Konrad, and Lawhon found no support for that allegation. [Tr. 131, 175, 177, 179].

The present record thus unquestionably contains substantial evidence to support the conclusions that plaintiff's complaints are overstated and that she refuses to responsibly participate in her own health care. In declining to acknowledge - let alone follow - physician treatment recommendations, her style of life is utterly inconsistent with that of a person who

15

truly suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

Even assuming that a reasonable fact-finder could have credited plaintiff's subjective complaints, a decision of the Commissioner is not subject to reversal merely because a reasonable mind could have reached the opposite conclusion. *See, e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The substantial evidence standard of review permits that "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The ALJ evaluated plaintiff's complaints in light of the available record and made a credibility finding. "It is the ALJ's job to make precisely that kind of judgment." *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court should be "particularly reluctant" to overturn that judgment, especially where supporting discrepancies exist in the record. *See id.*

Substantial evidence supports the ALJ's identification of plaintiff, "at an early stage[, as a] claimant[] whose medical impairments are so slight that it is unlikely [she] would be found to be disabled even if [her] age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. The ALJ's decision was consistent with the opinions of Drs. Konrad, Payne, and Gulbenk, and the ALJ adequately explained his rejection of the opinion of treating physician Wolfe.

16

The Commissioner's final decision will therefore be affirmed, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

17